IN THE OREGON TAX COURT

GAINS et al
*v.*
DEPARTMENT OF REVENUE
(TC 1640)

Jean H. Gains acted as attorney *pro se* for the plaintiffs.

Alfred B. Thomas, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered January 26, 1982.

**CARLISLE B. ROBERTS, Judge.**

This is a property tax relief case, arising under 1979 Or Laws ch 241, § 3(1), applicable to the tax year 1981-1982.

Plaintiffs appealed from a denial by the Director of the Department of Revenue of plaintiffs' plea for hardship relief, filed pursuant to ORS 307.475. The facts, as alleged in plaintiffs' complaint, are not in dispute.

Plaintiffs purchased their present home, located in Marion County, Oregon, in April 1980. At the time, they still owned and resided at a home in Geneva, Illinois. In March of that same year, plaintiffs had received a notice from their escrow agent which advised them of the procedure for making application for Oregon property tax relief. Plaintiffs believed that this notice had been supplied to the escrow company by the Marion County assessor's office.

In June 1980, plaintiffs received, at their Illinois residence, a 1980 Oregon property tax relief application which had been partially filled out by the Marion County assessor's office. Plaintiffs' completed the form, but did not mail it. Instead, they telephoned to the Department of Revenue and inquired as to their eligibility for relief. They were advised that since they would not be residing in their Oregon home before June 30, 1980, they would not be eligible for tax relief in 1980-1981.

In late 1980, after moving to Oregon, plaintiffs received a notice advising them that they had missed the application deadline for property tax relief for 1980-1981. They telephoned to the Department of Revenue once again and confirmed the fact that they would not have been eligible for relief in 1980-1981.

In the following year, 1981, no brochures or partially completed application forms were sent to the plaintiffs. When the tax relief filing deadline for 1981-1982 passed, plaintiffs were caught unaware. It was not until plaintiffs received their tax bill for the third quarter of 1980-1981 in late April 1981, that they remembered they had not yet filed for relief. They immediately completed and filed an application with the County Assessor of Marion County which was immediately (in their presence) rejected as untimely. Appeal was then made to the Director of the Department of Revenue for hardship relief.

Plaintiffs' petition to the Director asserted that their failure to timely apply for 1981-1982 was due to good and

sufficient cause. They stated that the Marion County assessor's office, in providing printed instructions to the real estate escrow agents during 1980, in notifying plaintiffs of the procedures for claiming property tax relief for 1980-1981, in providing a partially completed form for 1980, and in notifying plaintiffs of their failure to file in 1980, caused the plaintiffs to rely upon the assessor for guidance as to 1981-1982. While they were waiting for this guidance, the filing deadline passed. The Deputy Director denied plaintiffs' petition for hardship relief, stating that "lack of knowledge is not considered good and sufficient cause for not filing on time."

Plaintiffs assert in this court that the series of events which caused them to rely upon the assessor for property tax relief information for 1981-1982 amounted to an estoppel which was good and sufficient cause for late filing. Additionally, plaintiffs allege that the defendant, in denying hardship relief, did not exercise discretion as required by ORS 307.475.

In 1980, the property tax relief act was still a new program. In an effort to familiarize Oregonians with it, the Department of Revenue publicized the property tax relief act through all channels of the media. County assessors were encouraged to make every attempt to inform taxpayers of filing procedures and deadlines. Title companies and savings and loan associations were invited to provide brochures to home buyers. All Oregon taxpayers were sent application information. In 1981, the property tax relief program was deemed to be established in the mind of the home-owning public. The expensive publicity was reduced and the department directed its principal efforts to other areas of concern.

■ It is understandable that the actions of the Marion County assessor in 1980 created an impression in the minds of the plaintiffs that his office was assuming and undertaking responsibility for notifying all taxpayers of property tax relief. However, the assessor's conduct does not rise to the level of estoppel. In a case often cited by this court, the Oregon Supreme Court discussed the estoppel doctrine:

"* * * The policy of efficient and effective tax collection makes the doctrine of rare application. It could only be applied when there is proof positive that the collector has *misinformed the individual taxpayer* and the taxpayer has a

particularly valid reason for relying on the misinformation and that it would be inequitable to a high degree to compel the taxpayer to conform to the true requirement. * * *." *Johnson v. Tax Commission,* 248 Or 460, 463-464, 435 P2d 302, 304 (1967). [Emphasis supplied.]

No misinformation was given by the Marion County assessor.

The legislature was obviously thinking of a situation similar to the case at bar when it adopted ORS 305.840 in 1973. That section provides:

"Whenever any provision of law provides for a form to be supplied, furnished, or provided by a county assessor, the requirement means that the county assessor shall make the form available to a taxpayer at the office of the county assessor. In such cases there is no requirement that the county assessor mail the form to the taxpayer unless the statute specifically provides for such mailing. Where a taxpayer requests the assessor to mail the form to him, *or when the assessor voluntarily mails the form, the assessor does not undertake the responsibility for actual receipt by the taxpayer of the form, and no estoppel applies against the assessor if the taxpayer does not receive the form."* [Emphasis supplied.]

In recent years, the county assessor has been made more and more responsible for issuing assessment notices under specific statutes. While this has aided many taxpayers, it has also lulled partially informed taxpayers improperly to rely on the assessor. The legislature, in the 1973 statute quoted above, clearly intended to limit estoppel claims. Thus, even where the assessor is required by law to provide forms to a taxpayer, the assessor's failure to mail these forms does not give rise to an estoppel. As the plaintiffs have conceded, the assessor was under no legal obligation to supply property tax relief forms in this instance.

This brings us to plaintiffs' claim that the defendant's Deputy Director did not exercise a proper discretion in denying plaintiffs' plea for hardship relief. The Deputy Director stated as his reason for denial of relief that "lack of knowledge is not considered good and sufficient cause for not filing on time." Plaintiffs contend that, because the Deputy Director decided the case on this basis, he did not give consideration to their estoppel argument. In other words, because plaintiffs were alleging "estoppel" as "good and sufficient cause" rather than "lack of knowledge," in order to

have properly denied relief the Deputy Director would have had to find that *estoppel* did not constitute "good and sufficient cause."

In light of the Supreme Court's rulings indicating that acts of the assessor (equivalent to those described in this suit) were not sufficient to give rise to estoppel, it was reasonable for the Deputy Director to conclude that plaintiffs' reason for late filing was lack of knowledge as to the filing deadline (an element of estoppel). Under the facts of this case, the court cannot say that the defendant's Deputy Director did not exercise discretion in denying plaintiffs' hardship claim. *See Rogue River Pack. v. Dept. of Rev.,* 6 OTR 293 (1976).

Plaintiffs must be complimented for their able presentation of this case and their understanding of the intricacies of the laws involved. Plaintiffs' meticulous record keeping and orderly presentation of the case were of great assistance to the court.

The Deputy Director's determination is affirmed. No costs to either party.