Submitted March 7, reversed and remanded on claims for attorney fees;
otherwise affirmed August 13, 2008

## Steven D. BEGGS,
*Plaintiff-Respondent,*
*Cross-Appellant,*

*v.*

## Michael S. HART,
dba E-Z Grade,
*Defendant-Appellant,*
*Cross-Respondent.*

Marion County Circuit Court
04C10033; A133290

191 P3d 747

L. E. Ashcroft and Ashcroft Wiles Ammann, LLP, filed the opening brief for appellant - cross-respondent. On the reply brief was David B. Wiles.

Jeffrey M. Edelson, Paul S. Bierly, and Markowitz, Herbold, Glade & Mehlhaf, P.C., filed the brief for respondent - cross-appellant.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

This appeal arises from an action in equity in which plaintiff sought, among other relief, a declaration that a non-competition agreement was unenforceable. Defendant counterclaimed for an accounting, for specific enforcement of a contractual right to exercise an option to purchase plaintiff's truck, and for a declaration that the noncompetition agreement was enforceable. Also, each party sought an award of attorney fees as the prevailing party. The trial court held that the noncompetition agreement was enforceable but modified its terms, and held that defendant was entitled to specific performance on the option to purchase plaintiff's truck. It also denied the requests of both parties for an award of attorney fees. On appeal, defendant asserts two assignments of error, and, on cross-appeal, plaintiff asserts five assignments of error. We review the record *de novo*, ORS 19.415(3),[1] and we reverse and remand on the issue of attorney fees but otherwise affirm.

We take the following facts from the record. Defendant operated a business that delivered aggregate rock to customers in the Salem area. He used a specialized truck modified to distribute the aggregate rock over a specific area at a specific depth. Eventually, defendant began to receive more orders than he could accommodate. Defendant first met plaintiff in the fall of 1997, and they became good friends. In the spring of 2000, they began discussing the possibility of plaintiff working for defendant. At that time, plaintiff worked as a heavy equipment operator for one of defendant's aggregate rock suppliers. In June 2000, plaintiff agreed to work for defendant and purchased a used aggregate conveyor truck. Plaintiff then significantly modified the truck to perform his work for defendant. Plaintiff's job consisted of picking up aggregate rock and distributing it according to customer specifications.

---

[1] *See also Larson v. Trachsel*, 282 Or 247, 249-50, 577 P2d 928 (1978); *Rem Metals Corp. v. Logan*, 278 Or 715, 722, 565 P2d 1080 (1977); *Lawrence v. Peel*, 45 Or App 233, 235, 607 P2d 1386 (1980).

On October 1, 2000, four months after plaintiff began to work for defendant, the parties signed an agreement entitled "Agreement to Engage Contractor and Option to Purchase Truck"—the subject of this action. Three provisions of the agreement frame the issues in this appeal. First, the agreement contains a noncompetition clause that restricts plaintiff from engaging in the operation of a "conveyored aggregate delivery service" within a 50-mile radius of defendant's office in Salem, Oregon, for five years after plaintiff's working arrangement is terminated. Second, the agreement provides that, if plaintiff terminates his working arrangement, defendant shall have the option to buy plaintiff's truck. And, third, the agreement provides that the prevailing party in an action arising out of the contract is entitled to attorney fees.

In October 2002, plaintiff stopped working for defendant. At that time, defendant sent plaintiff a letter that confirmed the termination of plaintiff's working arrangement, that expressed defendant's intention to exercise his option to buy plaintiff's truck, and that requested that plaintiff establish a purchase price for the truck. Plaintiff did not respond to the letter. Defendant then sent another letter informing plaintiff that he was exercising his option to buy the truck, and he offered $40,000 for its purchase. Plaintiff, through counsel, responded that he did not intend to sell his truck.

In January 2004, plaintiff filed this action, ultimately asserting four claims in his second amended complaint—the operative complaint for purposes of this appeal. Those claims included a request for a declaration that the noncompetition agreement was unenforceable, or, in the alternative, "a declaration that the scope of the noncompetition agreement is unreasonable and overly restrictive and that the temporal and/or geographic limits should be reduced." Defendant counterclaimed as indicated above. After a trial to the court, the trial court entered a general judgment that incorporated a letter opinion. The trial court ruled in the letter opinion that the scope of the noncompetition agreement was unreasonable, and it reduced the time restriction to three years and the geographic restriction to

the area within a 25-mile radius from the city center of Salem.[2] The trial court explained,

> "Accordingly, plaintiff's claims for wages and money damages are dismissed. The non-competition agreement, as modified by this court, is declared enforceable against plaintiff. Finally, pursuant to the contract, defendant is permitted to purchase plaintiff's truck—if the two cannot agree on a fair price, then an arbitrator should be selected to set the price."

That ruling effectively terminated the noncompetition agreement as modified by the court because, at the time of the ruling, three years had already elapsed from the date plaintiff terminated his working arrangement. Finally, the trial court concluded that neither party was the prevailing party and declined to award attorney fees.

In his first assignment of error, defendant contends that "[t]he court should not have modified the non-compete provisions of the Agreement between the parties." Second, defendant contends that "[d]efendant should be determined to be the 'prevailing party' and awarded costs, disbursements, prevailing party fee and attorney fees as provided by the contract enforced by the court judgment." Plaintiff, on cross-appeal, as we understand his arguments in his first three assignments of error, asserts that the trial court erred in enjoining him from competing with defendant for a period of three years. He also assigns error to the trial court's grant of specific performance of the option to purchase his truck. Finally, he argues that he was the prevailing party at trial for purposes of attorney fees.

■■ As a threshold matter, we must determine whether defendant's first assignment of error and plaintiff's first, second, and third assignments of error are moot. *See Hood River County v. Stevenson*, 177 Or App 78, 81, 33 P3d 325 (2001) (jurisdictional issues need not be raised by the parties, because the court has the obligation to consider them *sua sponte*). An issue becomes moot where "the court's exercise of authority would no longer have a 'practical effect' on the

---

[2] The trial court found plaintiff to be an independent contractor rather than an employee. Hence, ORS 653.295 (2003), *amended by* Or Laws 2005, ch 22, § 459, does not apply.

rights of the parties to the controversy." *Pendleton School Dist. v. State of Oregon*, 220 Or App 56, 66, 185 P3d 471 (2008) (citing *Yancy v. Shatzer*, 337 Or 345, 349, 97 P3d 1161 (2004)). Thus, when an injunction is entered by the trial court ordering a party to comply with a noncompetition agreement for a specific time period, and that time period has expired, the controversy is generally moot for purposes of appeal. *Inventory Auditors, Inc. v. Miller*, 61 Or App 262, 264, 656 P2d 393 (1983).

■ The issue under the above assignments concerns whether the trial court erred when it modified the duration and the scope of the noncompetition agreement. We observe that plaintiff stopped working for defendant in October 2002. Thus, under either its original terms or its modified terms, the duration of the noncompetition agreement expired during the pendency of the proceeding in this court. Nonetheless, we conclude that the controversy presented by these assignments of error is not moot because the entitlement to attorney fees based on the noncompetition agreement depends on whether the trial court correctly modified the terms of the agreement. *See 2606 Building v. MICA OR I Inc.*, 334 Or 175, 179 n 2, 47 P3d 12 (2002) (a decision regarding the enforcement of a contract has a "practical effect on the rights of the parties" even after the terms of the contract have expired, if the trial court's award of attorney fees depends on the correctness of the trial court judgment).

The trial court applied a rule of reasonableness to both the geographical scope and the duration of the noncompetition agreement, basing its decisions on the circumstances of defendant's business. On review, we find no error in the trial court's analysis in that regard, and a further discussion of that issue would not benefit the bench or the bar. The only remaining issue arising from the enforcement of the noncompetition agreement pertains to the issue of attorney fees and who is the prevailing party with regard to that issue at trial. We defer our discussion of that issue to a later point in the opinion.

Plaintiff's argument under his fourth assignment of error is that "[t]he court erred by granting defendant specific performance of the option to purchase plaintiff's truck"

because, according to plaintiff, the option provision is "a species of noncompetition agreement." Plaintiff explains,

> "The agreement between the parties contained not only a traditional geographic noncompetition agreement, it also included an option for [defendant] to purchase [plaintiff's] truck in the event [plaintiff] terminated the agreement. The option provision is also a species of noncompetition agreement, and is subject to the standards of fairness and reasonableness as any restraint of trade. Since the 3-year period had expired, [defendant] should not be permitted to exercise the option."

In support of his argument, plaintiff points to defendant's testimony that the purpose of the option to purchase was, in part, "to prevent [plaintiff] from operating within the 50-miles and with my customers."

The option to purchase states:

> "If, for any reason, Contractor terminates this agreement as is provided in § 7 below or if Contractor sells the truck and conveyored aggregate equipment described above, Owner shall have the absolute right at Owner's sole discretion to buy said truck and equipment for the price and terms as the parties agree. If the parties cannot agree as to the price, the price shall be set by an arbitrator who is mutually acceptable to both parties. If the parties cannot agree on an arbitrator then either party can apply to the presiding Circuit Court Judge of Marion County to appoint an arbitrator."

Assuming without deciding that plaintiff's interpretation is correct, we note that defendant attempted to exercise the option in 2002—before the three-year restrictive period elapsed—when defendant sent plaintiff a letter informing him that defendant was exercising his rights under the option. Nonetheless, plaintiff argues that defendant did not properly exercise the option:

> "[Defendant] never petitioned the court to appoint an arbitrator, or took any meaningful steps to purchase the truck, other than an initial demand and the claim in the lawsuit that languished until trial 3 years later.

"* * * * *

"Since the court ruled that the noncompetition agreement should last no more than 3 years, the truck option lapsed when [defendant] failed to secure the appointment of an arbitrator and a ruling on fair market value. Otherwise, to allow enforcement of that option at this late date would effectively give [defendant] the ability to impair competition beyond a reasonable length of time in restraint of trade."

■      We are unpersuaded by plaintiff's argument. There is no language in the option provision or in the agreement as a whole that provides that a valid exercise of the option depends on a party seeking the appointment of an arbitrator, or, otherwise, the option is not enforceable. Moreover, in *Alk v. Lanini*, 61 Or App 158, 163, 656 P2d 367 (1982), *rev den*, 294 Or 613 (1983), we explained that, in an action for specific performance, "[a] purchaser need not tender performance in order to preserve his right to specific performance when the seller has repudiated the contract, or has otherwise indicated that tender would not be accepted." *See also Davidson v. Wyatt*, 289 Or 47, 62, 609 P2d 1298 (1980) ("[W]hen payment of money is required in order to exercise the option, an optionor who has stated that he will refuse to accept the payment may not insist that the optionee nevertheless complete the financing or other arrangements necessary to obtain the money and make the futile gesture of offering to pay it.").

■      After defendant informed plaintiff in 2002 that he was exercising his option to purchase, plaintiff responded that he would not sell his truck. Thus, plaintiff explicitly rejected defendant's exercise of his option and repudiated their agreement. In light of plaintiff's rejection, any further steps by defendant directed toward the exercise of the option would have been futile. It follows, based on the above principles, that defendant properly exercised his option to purchase plaintiff's truck and that the trial court did not err in granting specific performance of that agreement.[3]

Finally, we turn to the issue of whether the trial court erred by concluding that neither party was the prevailing party for purposes of attorney fees. The court wrote in its letter opinion, "I have carefully reviewed the pleadings and

---

[3] Plaintiff does not argue that the option provision is otherwise unenforceable.

my notes from the trial. It is my opinion that NEITHER party prevailed on their respective claims regarding the contract and, therefore, it is my decision that neither party will be awarded their attorney fees and costs - each will pay their own." (Uppercase in original.) The trial court's statement that neither party prevailed on his respective claims is error for the reasons that follow.

■     We turn first to the terms of the agreement with respect to attorney fees. It provides:

> "If any suit or action [is] filed by any party to enforce this agreement or otherwise with respect to the subject matter of this agreement, the prevailing party shall be entitled to recover reasonable attorney fees incurred in preparation or in prosecution or defense of any such suit or action as fixed by the trial court, and if any appeal is taken from the decision of the trial court, reasonable attorneys fees as fixed by the appellate court."

The above provision is mandatory in its terms; it provides that "the prevailing party shall be entitled to recover reasonable attorney fees[.]" Consequently, the agreement does not vest any discretion in the trial court not to award attorney fees. *See Ladum v. City of Reedsport*, 83 Or App 666, 669, 733 P2d 66 (1987). If the trial court believed that it had the discretion under the terms of the agreement not to identify a prevailing party, it erred.

■■     Also, the trial court in its letter opinion referred to "the difficult question of who 'won' in this case[.]" The court observed that neither party sought the result arrived at regarding the noncompetition agreement. However, it does not necessarily follow that, merely because a party does not obtain all the relief sought, a party is not a prevailing party, as explained more fully below, and, at a minimum, the court failed to acknowledge that defendant prevailed on his claim for specific performance of the option agreement. Finally, the trial court made no reference to ORS 20.077, which also informs the issue:

> "(1)   In any action or suit in which one or more claims are asserted for which an award of attorney fees is either authorized or required, the prevailing party on each claim

shall be determined as provided in this section. The provisions of this section apply to all proceedings in the action or suit, including arbitration, trial and appeal.

"(2)   For the purposes of making an award of attorney fees on a claim, the prevailing party is the party who receives a favorable judgment or arbitration award on the claim. If more than one claim is made in an action or suit for which an award of attorney fees is either authorized or required, the court or arbitrator shall:

"(a)   Identify each party that prevails on a claim for which attorney fees could be awarded;

"(b)   Decide whether to award attorney fees on claims for which the court or arbitrator is authorized to award attorney fees, and the amount of the award;

"(c)   Decide the amount of the award of attorney fees on claims for which the court or arbitrator is required to award attorney fees; and

"(d)   Enter a judgment that complies with the requirements of ORS 18.038 and 18.042."

Accordingly, on remand, the trial court must consider on a claim-by-claim basis under ORS 20.077 who received a "favorable judgment" and is, therefore, the "prevailing party" for each claim. *See Lemargie v. Johnson*, 212 Or App 451, 454 n 3, 157 P3d 1284 (2007) ("Under ORS 20.077, there can be more than one prevailing party in actions that involve multiple claims or counterclaims[.]"); *Robert Camel Contracting, Inc. v. Krautscheid*, 205 Or App 498, 503-05, 134 P3d 1065 (2006) ("[I]n the context of actions involving multiple claims, the legislature intended the courts to determine the prevailing party on each claim and award attorney fees accordingly.").[4] To determine who is the prevailing party on each claim, a court must weigh "what was

---

[4] Indeed, as we explained in *Robert Camel Contracting, Inc.*, the legislature's intention in enacting ORS 20.077 was to

" 'codify recent Oregon case law regarding the definition of 'prevailing party' for purposes of attorney fees in actions where there are multiple claims and counterclaims to ensure a 'claim-by-claim' approach to the award of attorney fees.' "

205 Or App at 503-04 (quoting Staff Measure Summary, House Committee on Judiciary, HB 2374, Apr 11, 2001; Staff Measure Summary, Senate Committee on Judiciary, HB 2374, May 18, 2001).

sought by each party against the result obtained." *Lawrence v. Peel*, 45 Or App 233, 243, 607 P2d 1386 (1980). It may be that there is more than one prevailing party in this case, but any initial determination must be made on a claim-by-claim basis.[5]

Reversed and remanded on claims for attorney fees; otherwise affirmed.

---

[5] We do not intend to imply that there is more than one prevailing party in this case. That determination is for the trial court to initially make by applying the correct legal standard.